## Evans's Administrator *versus* Clover.

1. E. and C. were in partnership: C. bought out E., and gave him three judgment notes for $1088.33 each, and agreed to pay the partnership debts. At the same time, C. assigned to E. some individual debts, which E. bound himself to collect, and apply to the payment of certain specified debts against the firm. On the trial of a *sci. fa. sur* judgment entered on one of the notes, it was competent for C. to prove that E. had received money on the claims put into his hands, and had not applied it as agreed.

2. If E. had to pay debts that C. agreed to pay, this would be a sufficient answer to C.'s set-off, *pro tanto.*

3. A refusal to open a judgment, is not a judgment, sentence or decree, and concludes nothing, and is not assignable for error.

4. A discontinuance is matter of discretion with the court; a nonsuit is a matter of the discretion of the plaintiff, and it would be error to refuse it.

5. A plaintiff of right may take a nonsuit, at any time before the jury announce their readiness to deliver the verdict.

ERROR to the Court of Common Pleas of *Clarion county.*

This was an *alias scire facias* on a judgment obtained by the plaintiff's intestate, in his lifetime, against defendant, for $1088.33.

The intestate, Charles Evans, and defendant, Levi G. Clover, were at one time partners in the mercantile business, in the borough of Brookville, Jefferson county, Pennsylvania, and the partnership was carried on under the name and firm of Evans & Clover. This partnership was dissolved by the defendant buying out. the intestate, Charles Evans, and undertaking to pay the partnership debts. The defendant agreed to pay Evans for his interest, $3264.99, for which said sum, Clover gave three judgment notes, each for the sum of $1088.33; two of which notes were entered

in the Common Pleas of Clarion county, and one in the Common Pleas of Jefferson county. These three several judgment notes were executed and delivered on the 29th day of August, 1843; and on the same day an agreement in writing was entered into between Charles Evans and Levi G. Clover, in which it is recited that the three bonds above mentioned, of $1088.33 each, have been given, and it is agreed that they shall be entered, two in the Common Pleas of Clarion county, and one in the Common Pleas of Jefferson county; and that if at any time Clover may have an opportunity so sell any of his real estate in Clarion or Jefferson counties, on which said judgments may be a lien, that Evans is to release all such portions of said real estate as Clover may sell, from the lien of the judgments aforesaid, providing the said Clover pays over or appropriates the purchase-moneys arising from said sales, on the claims against the firm of Evans & Clover, or on the aforesaid judgments in favor of Charles Evans; and by the said agreement it was further agreed, on the part of Clover, that he, Clover, bound and obligated himself to pay and discharge all debts and demands that may be owing and due by the firm of Evans & Clover, doing business and merchandising in Brookville, Jefferson county, Pennsylvania; and on the same day and at the same time, Charles Evans executed and delivered a bond to Clover in the sum of four thousand dollars; which said bond recited that the said Clover had by a certain instrument of writing, bearing even date with said bond, assigned and transferred unto said Evans all debts, dues, and demands, to which the said Clover may be entitled, or may be found due him on a settlement with the commissioners of Clarion county, for his (Clover's) share of moneys arising from the sale of the town lots in the town of Clarion, and all moneys that may be due to said Clover, agreeably to the terms of a contract between Clover and Edward Derby, of the one part, and the commissioners of Clarion county aforesaid, of the other part, for the erection of the court house in said county of Clarion; that is, the balance that may be due the said Clover, on a final settlement between the said Clover and Edward Derby, his co-partner in the building of the said court house. In consideration whereof, the said Evans, by the said bond, obligates himself to collect and apply the said balances as may be due, in payments of certain judgments or claims due Simon Mudge and others, named in said bond, creditors of the firm of Evans & Clover, doing business as co-partners in Brookville, Jefferson county.

After the plaintiff had given in evidence, on his part, the original judgment, and rested, the defendant gave in evidence the bond and agreement above referred to, and then went on to show, by record and other evidence, the amount of money that Evans had received from the county of Clarion, under the assignment of Clover, and that he, Evans, had not applied all the money he

[Evans's Administrator *v.* Clover.]

had received to the payment of the judgments and claims specified in the bond; and in addition, that some part of the claims had been paid through Clover, by the sale of some of his real estate and otherwise, for the purpose of showing that Evans held in his own hands funds placed there by Clover, sufficient to pay the judgment on which the said *scire facias* issued.

After defendant closed his defence, the plaintiff gave in evidence the record of the other judgment, *Evans* v. *Clover*, and *fi. fa.* issued thereon, No. 59, May term, 1846 : on which inquisition was held and property condemned, for the purpose of showing, that under a rule to show cause why the inquisition should not be set aside and the judgment opened, which had been granted on the application of the defendant, the same matters were alleged as a defence to the judgment, which are now relied upon as defence here, as appeared by the affidavit of defendant made to obtain a rule.

The plaintiff then gave in evidence the payments made by Evans, on the judgments and claims mentioned in the bond, and then offered in evidence the record of a judgment, *William Barber & Co.* v. *Evans & Clover*, No. 104, September term, 1843, and others of same character, to show that Evans paid debts belonging to the firm, which Clover was bound to pay. This and the others offered, was not embraced in the schedule of debts Evans was bound to pay, by the bond to apply the money which was received from the county of Clarion, under the agreement. This was objected to. Objection sustained. Testimony overruled, and exceptions by plaintiff.

The rejection of this testimony forms the first bill of exception on the part of plaintiff.

Plaintiff then asks leave to discontinue the cause; which, upon argument, is refused by the court, and plaintiff excepts.

This is the ground of the second bill of exceptions.

The plaintiff then gave in evidence some further payments on the claims specified in the bond, and, among the rest, offered the receipt of Thomas Sutton, Esq., attorney for Reynolds, M'Farland & Co., which was as follows :

Reynold, M'Farland & Co. ⎫   In Common Pleas
       *v.*          ⎬
C. Evans & Levi G. Clover. ⎭   of Clarion County.

Received, March 17, 1847, of Hon. C. Evans, an order on Church & Carothers, of Pittsburg, for $200, drawn by D. B. Long & Co., in favor of C. Evans, and by C. Evans endorsed to me as attorney of the plaintiff in the above case; when paid, to be applied on this case.

                THOMAS SUTTON, Attorney for Plaintiff.

This offer was accompanied by the testimony of D. B. Long,

one of the firm of D. B. Long & Co., who stated he had credited Church & Carothers with the order, and charged Evans, and has heard nothing of it since. Receipt and testimony objected to. Objection sustained, and exception by plaintiff.

The plaintiff, on the close of the testimony on both sides, presented the following point to the court:

"That the same matters in controversy in this suit, having come up on a hearing of the parties, on a rule to show cause why an inquisition should not be set aside and the judgment opened, and defendant let into a defence in the Court of Common Pleas of Clarion county, E. D., No. 59, May term, 1846, the judgment of the court therein discharging the rule, is conclusive upon the parties in this case." Whereupon the court decided this point in the negative. Verdict for defendant.

The answer to the point and rulings of the court, in relation to the admission of testimony are the errors complained of.

————, for plaintiff in error, referred to *Mechanics' Bank* v. *Fisher*, 3 R. 341; *Darlington* v. *Gray*, 5 Wh. 487.

*Corbett* and *Sutton*, for defendant in error, referred to *Postmaster General* v. *Morvel*, Gilpin's Rep. 106; *Moorhead* v. *West Branch Bank*, 3 W. & S. 550; *West Branch Bank* v. *Moorhead*, 5 W. & S. 542; *Schuylkill Bank* v. *Macallister*, 6 W. & S. 149; *Pollick* v. *Hall*, 3 Yeates, 42; *Brown* v. *Fox*, 2 Yeates, 530; *Belchier* v. *Gransell*, 5 Barr, R. 2502.

The opinion of the court was delivered March 12, 1855, by

WOODWARD, J.—Evans and Clover were at one time partners. They dissolved. Clover bought out Evans, gave him three judgment notes for $1088.33 each, and agreed to pay the partnership debts.

At the same time, Clover assigned to Evans certain debts due to himself individually, and Evans bound himself to collect them and apply the money in satisfaction of certain specified debts of the firm.

The judgment notes were entered on record and this was a *scire facias* to revive one of the judgments. The plea was payment. The assignments of error are four in number, which will be considered in their order.

1. The defendant gave evidence that Evans had received money on the claim put in his hands by Clover, and had not applied it to the debts he had bound himself to pay with it. The propriety of admitting this evidence cannot be doubted. Clover had a right to appoint the application of his own funds, and when Evans undertook to collect and apply them for Clover, he had no right to keep the money, nor to divert it from its destination. If he

[*Evans's Administrator v. Clover.*]

did either of these things he made himself accountable for it, and it was a fair subject of set-off.

By way of rebutting this fact, the plaintiff offered to prove, that the attorney of one of the creditors, whom Evans was to pay with Clover's money, had received from Evans a draft on a house in Pittsburgh, for two hundred dollars, to be credited when paid, but no evidence was offered to show that the credit was actually given, or that the draft was ever paid. This was not payment, nor was it performance of the duty Evans had undertaken, and the court were right in rejecting the evidence.

2. But if Evans, still liable to partnership creditors, was compelled to pay debts which by the terms of the dissolution Clover had assumed and agreed to pay, why would not such a fact be an answer to Clover's set-off? These claims back and forth, all grew out of, and were connected with the same transaction, the dissolution of the firm. By the terms of the dissolution, Clover assumed the debts of the firm, and received a consideration therefor. As between him and Evans they became his debts. For a specific portion of them he furnished funds to Evans, which as we have said, Evans was bound to apply as appointed; but Clover was equally bound to pay the rest of the debts. If then Clover neglecting to perform his agreement, suffered debts which he had bound himself to Evans to pay, to be collected out of Evans, what was it but appropriating the funds he had put into Evans's hands in a different manner from that first indicated, but still to his own use? And if Clover had the benefit of these funds in that manner, he is not entitled to set them off against this judgment, for that would be to give him the benefit of them twice. We are of opinion, therefore, the court erred in rejecting the evidence offered to show that Evans paid debts of the firm of Clover and Evans, which Clover was bound to pay. It was not set-off against set-off. It was an answer to the defendant's evidence in support of his plea of payment. It was showing that in equity and good conscience he had not paid this judgment; that the funds he had entrusted to the plaintiff had gone to his own use by his negligence in not performing his agreement, and therefore that he was not entitled to plead them as payment of this judgment.

How far this evidence would have reached, whether to the extent of all the moneys received by Evans to Clover's use, we have no means of determining. What we decide is, that it was rebutting evidence, competent for the plaintiff to give, and that it ought to have been admitted. If on the next trial it is not shown that Evans paid partnership debts assumed by Clover, to the full amount of Clover's funds in his hands, the balance whatever it is, will be applicable to this judgment, unless indeed, it be shown to have been applied to the specific debts which Evans was to pay out of these funds.

[Greenwalt v. Austin.]

3. It appears that Clover had previously to this trial, applied to the court to open one of the other judgments against him, and his motion was founded on an affidavit of the same facts which he used here as a defence. The motion was refused. The plaintiff asked the court to charge, that the refusal to open the judgment in the other case was conclusive upon the parties in this. Had the motion been made in *this* judgment, no such effect could have been attributed to the denial of it, much less when made in another. The matter alleged arose subsequent to the judgment, and was proper as defence to a *scire facias*, and this, most likely, was the reason the motion to open was not entertained. But the refusal of that motion is not a judgment, sentence or decree, and concludes nothing. It would have been error if the court had affirmed the plaintiff's point.

4. Before the cause went to the jury, the plaintiff asked leave to discontinue the suit, which the court refused. It is quite clear that a plaintiff may take a *nonsuit* on the trial whenever he thinks proper. At common law he might do so at any time before the verdict was actually recorded, and the only restriction of the right by our statute, is that which requires it to be exercised before the jury announce their readiness to deliver the verdict. But a *discontinuance* is not a nonsuit, though the difference in their legal effect is slight. A greater distinction exists in the mode of applying them, the one being subject to the discretion of the plaintiff, the other of the court. The plaintiff has a right to suffer a nonsuit before or at the trial, and to deny it to him would be error, but a discontinuance may be allowed or refused according to the discretion of the court, which is not assignable for error. We cannot doubt it was a discontinuance and not a nonsuit, the counsel asked in this case, and the court had a right to refuse it. The only error apparent in the record having been pointed out, the judgment is reversed, and a *venire de novo* awarded.

NOTE BY THE REPORTER.—For reasons which need not be explained, parts of this opinion were written by Mr. Justice Black, the residue by the judge who read it.